*199 OPINION OF THE COURT
Hancock, Jr., J.
A judgment for $9.2 million in compensatory damages and $13 million in punitive damages, based on a jury verdict, was recovered in an Illinois trial court against American Home Products Corp. (AHP). The damages were awarded for the grave and permanent injuries (including severe impairment of mental function) sustained by Marcus Batteast, a two-year-old boy, as a result of the administration of a drug, aminophylline, manufactured by AHP through its subsidiary, Wyeth Laboratories. On appeal to the appellate court of Illinois the judgment against AHP was unanimously affirmed (Batteast v American Home Prods. Corp., No. 806-16808 [Cir Ct, Cook County, Ill], affd sub nom. Batteast v Wyeth Labs., 172 Ill App 3d 114, 526 NE2d 428 [1st Dist 1988], lv granted 123 Ill 2d 556, 535 NE2d 398 [1988]).
The question to be decided — certified to this court by the United States Circuit Court of Appeals for the Second Circuit —concerns the insurance coverage under the excess liability policy issued by The Home Insurance Company (Home) to AHP and whether that policy covers the award for punitive damages in the Batteast case. Home commenced an action in New York State Supreme Court against AHP seeking a judgment declaring that it was not obligated to indemnify AHP for the amount of the punitive damages not covered by primary insurance. The action was removed to Federal court which declared that Home "is liable under its excess insurance policy for the punitive damages awarded in Batteast”. (Home Ins. Co. v American Home Prods. Corp., 665 F Supp 193, 197 [Duffy, J., SD NY 1987].) Home appealed to the Circuit Court of Appeals.
The Circuit Court of Appeals, noting that the question of coverage for punitive damages recovered in out-of-State judgments is one of first impression in this State and one which involves important New York public policy considerations, has certified to us the following question: "Would New York require the insurer to reimburse the insured for punitive damages awarded against the insured on the out-of-state judgment in this case?” (873 F2d 520, 522 [2d Cir 1989].)
For reasons which follow, we hold that to require Home *200 to indemnify AHP for such damages under its excess policy would be contrary to the public policy of this State. Accordingly, we answer the certified question in the negative.
I
The parties are in agreement that the answer to the question certified depends on an analysis of New York’s public policy and an application of that policy to the circumstances here.* There is no question that the general rule, as articulated in two of our recent decisions, is that New York public policy precludes insurance indemnification for punitive damage awards, whether the punitive damages are based on intentional actions or actions which, while not intentional, amount to "gross negligence, recklessness, or wantonness” (Public Serv. Mut. Ins. Co. v Goldfarb, 53 NY2d 392, 400) or "conscious disregard of the rights of others or for conduct so reckless as to amount to such disregard” (Hartford Acc. & Indent. Co. v Village of Hempstead, 48 NY2d 218, 227).
The considerations underlying our public policy — thoroughly discussed in the court’s opinion in Hartford Acc. (id., at 225-229) — need not be detailed here. The main argument against coverage, we noted, is that to allow it would defeat "the purpose of punitive damages, which is to punish and to deter others from acting similarly, and that allowing coverage serves no useful purpose since such damages are a windfall for the plaintiff who, by hypothesis, has been made whole by the award of compensatory damages.” (Id., at 226.)
We underscored these policy considerations in Public Serv. Mut. Ins. Co. v Goldfarb (supra). There, we declared that the insured, a dentist, could not claim reimbursement for any punitive damages that might be awarded in the malpractice case which had been brought against him by a patient who claimed that he had committed sexual abuse. We emphasized that if punitive damages were to be awarded "on any ground other than intentional causation of injury [emphasis in original] — for example, gross negligence, recklessness or wantonness —indemnity for compensatory damages would be allowable even though indemnity for the punitive or exemplary component of the damage award would be barred as violative of *201 public policy. ” (Public Serv. Mut. Ins. Co. v Goldfarb, supra, at 400 [emphasis supplied].)
It can be argued that the claims for punitive damages in Public Serv. Mut. (based on alleged sexual abuse by the insured) and in Hartford Acc. (based on police officers’ alleged violation of 42 USC § 1983 in using nightsticks) involved alleged wrongs which could be found to have been intentional or even criminal and which were, for that reason, more grievous in nature than the wrongful conduct in a case based on negligence or products liability. We hold, however, that the policy articulated in Public Serv. Mut. and Hartford Acc. should apply equally to cases involving conduct which, although not intentional, is found to be grossly negligent, or wanton or so reckless as to amount to a conscious disregard of the rights of others. Indeed, the very language of these opinions (see, Public Serv. Mut. Ins. Co. v Goldfarb, supra, at 400; Hartford Acc. & Indent. Co. v Village of Hempstead, supra, at 227) indicates that the same policy considerations would apply to conduct of this kind (see, Aetna Cas. & Sur. Co. v Shuler, 72 AD2d 591, 592; Padavan v Clemente, 43 AD2d 729; Parker v Agricultural Ins. Co., 109 Misc 2d 678, 680-681).
Nor should New York policy be applied any differently solely because the punitive damages award happens to have been rendered in another State. It is the punitive nature of the award coupled with the fact that a New York insured seeks to enforce it in New York against a New York insurer which calls for the application of New York public policy. To determine whether there should be reimbursement in New York for an out-of-State punitive damages award, we must examine the nature of the claim, including the degree of wrongfulness for which the damages were awarded in the foreign State, as well as that State’s law and policy relating to punitive damages in order to properly ascertain whether reimbursement would offend our public policy.
We accordingly turn to an analysis of the Batteast punitive damages award and of the Illinois law under which it was rendered.
II
The tort theory on which AHP’s liability was predicated was its failure to warn of the risks it knew to be inherent in the administration of the drug, aminophylline, in suppository form to children. The appellate court of Illinois, on its review *202 of the trial record, found "that there is ample evidence to support plaintiffs’ contention that Wyeth’s aminophylline was unreasonably dangerous due to the lack of adequate warnings accompanying the product. While the evidence demonstrates that Wyeth was aware of certain risks involved in administering aminophylline suppositories to children, Wyeth failed to warn the medical profession of the risks.” (Batteast v Wyeth Labs., 172 Ill App 3d 114, 127, 526 NE2d 428, 437, supra.) The appellate court listed nine separate risks for which no warning was given including, significantly, the fact that "severe intoxication and death have followed rectal administration because of hypersensitivity or overdosage” (id., at 127, at 437).
Having decided the question of liability, the appellate court addressed the issue of punitive damages and rejected defendant’s two contentions: (1) that the trial court should, as a matter of law, have dismissed the claim for punitive damages without submitting the issue to the jury and (2) that, in any event, the verdict on punitive damages was contrary to the weight of the evidence.
With respect to the legal challenge to the sufficiency of the proof to warrant submission of the punitive damages issue, the appellate court of Illinois stated: "if the jury believed that Wyeth was guilty of willful and wanton conduct which proximately caused plaintiff to be injured, and if the jury believed that justice and the public good require it, it was proper for the jury to award plaintiffs an amount which will serve to punish Wyeth and deter others from the commission of like offenses. Willful and wanton conduct is a course of action which shows deliberate intention to harm or shows an utter indifference or conscious disregard for the safety of others” (id., at 141, at 446). The court, on its review of the record, decided that the evidence was "amply sufficient to support the trial court’s decision to submit the issue of punitive damages to the jury” (id.).
In rejecting defendant’s argument that the punitive damages verdict was contrary to the weight of the evidence, the intermediate appellate court determined that, if accepted by the jury, the evidence of defendant’s failure to warn and its failure to provide sufficient information for avoiding toxicity in the use of the drug, despite its awareness of the involved risks, showed "an utter indifference to or conscious disregard for the safety of others” (id.). The court noted that the jury "believed the pertinent evidence [on the issue of punitive damages] which it had a right to do” (id.).
*203 In deciding whether there should be indemnification for the Batteast punitive damages verdict as affirmed by the appellate court, we should assume that the judgment was made in conformity with prevailing Illinois law. Under Illinois law, punitive damages may only be awarded upon a showing that a tort has been " 'committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others’ ” (Case Co. v McCartin-McAuliffe Plumbing & Heating, 118 Ill 2d 447, 453, 516 NE2d 260, 263 [1987] [quoting Kelsay v Motorola, Inc., 74 Ill 2d 172, 186, 384 NE2d 353, 359 (1978)]). The purposes behind a punitive award are to punish the defendant and to serve as a "warning” and as an " 'example to deter the defendant and others from committing like offenses’ ” (id.). Additionally, the Illinois Supreme Court has recently emphasized that "[because of their penal nature, punitive damages are not favored in the law, and courts must be cautious in seeing that they are not improperly or unwisely awarded” (Deal v Byford, 127 Ill 2d 192, 203, 537 NE2d 267, 272 [1989]) and will soon apply its own rule in the Batteast case, now pending before it.
We discern no relevant difference between the rules governing punitive damages in New York and the comparable rules in Illinois. In New York, as in Illinois, punitive damages are intended to act as a deterrent to the offender "and to serve as a warning to others. They are intended as punishment for gross misbehavior for the good of the public and have been referred to as 'a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine.’ [Citations omitted.] Punitive damages are allowed on the ground of public policy and not because the plaintiff has suffered any monetary damages for which he is entitled to reimbursement; the award goes to him simply because it is assessed in his particular suit. The damages may be considered expressive of the community attitude towards one who wilfully and wantonly causes hurt or injury to another.” (Reynolds v Pegler, 123 F Supp 36, 38 [SD NY 1954], affd 223 F2d 429 [2d Cir 1955], cert denied 350 US 846 [quoted in Toomey v Farley, 2 NY2d 71, 83].) The nature of the conduct which justifies an award of punitive damages has been variously described, but, essentially, it is conduct having a high degree of moral culpability (see, Walker v Sheldon, 10 NY2d 401, 405) which manifests a "conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.” (Welch v Mr. *204 Christmas, 57 NY2d 143, 150.) Such conduct need not be intentionally harmful but may consist of actions which constitute willful or wanton negligence or recklessness (see, Giblin v Murphy, 73 NY2d 769, 772; Public Serv. Mut. Ins. Co. v Goldfarb, supra, at 400; NY PJI 2:278).
The concept of punitive damages has been sanctioned under New York law in actions based on negligence (see, Wittman v Gilson, 70 NY2d 970, 972; Caldwell v New Jersey Steamboat Co., 47 NY 282, 296) and strict products liability (see, Bikowicz v Nedco Pharmacy, 130 AD2d 89, 94; see also, Racich v Celotex Corp., 887 F2d 393 [2d Cir 1989]; Roginsky v Richardson-Merrell, Inc., 378 F2d 832, 838-842 [2d Cir 1967]). While no case involving punitive damages in a strict products litigation has come before our court, nothing in New York law or public policy would preclude an award of punitive damages in a strict products case, where the theory of liability is failure to warn and where there is evidence that the failure was wanton or in conscious disregard of the rights of others. A products liability action founded on a failure to warn involves conduct of the defendant having attributes of negligence (see, Sage v Fairchild-Swearingen Corp., 70 NY2d 579, 585; Wolfgruber v Upjohn Co., 72 AD2d 59, 62, affd for reasons stated in App Div opn 52 NY2d 768) which the jury may find sufficiently wanton or reckless to sustain an award of punitive damages (see, Racich v Celotex Corp., 887 F2d 393, 396-397, supra [sustaining an award of punitive damages in a products liability case based on failure to warn of the dangers of asbestos and expressly rejecting the argument that under New York law the recovery of punitive damages would be inappropriate]; Fischer v Johns-Manville Corp., 103 NJ 643, 512 A2d 466 [1986]).
In concluding that punitive damages could be recovered in New York in a failure to warn case, we do not suggest that punitive damages are necessarily appropriate in all types of products liability litigation (see generally, discussion in Fischer v Johns-Manville Corp., supra; Comment, Punitive Damages Awards in Strict Products Liability Litigation: The Doctrine, the Debate, the Defenses, 42 Ohio St LJ 771; Comment, Torts-Damages-Punitive Damages Recoverable in a Strict Liability Failure to Warn Action Based on Exposure to Asbestos: Fischer v Johns-Manville Corp., 103 NJ 643, 512 A2d 466 [1986], 18 Rutgers LJ 979).
From our conclusion that willful and wanton conduct like that found to have been committed by AHP in Batteast could *205 support a punitive damages verdict under New York law, it follows that insurance indemnification for the Batteast punitive damages award would be contrary to our State’s public policy (see, Public Serv. Mut. Ins. Co. v Goldfarb, supra; Hartford Acc. & Indent. Co. v Village of Hempstead, supra).
Ill
AHP argues, however, that it is not enough for an application of our public policy that we be satisfied that the legal standard under which the punitive damages were awarded in Batteast is substantially the same as New York’s standard. We should look beyond the law, it is argued, and make our own de novo analysis of the trial record to determine whether AHP’s conduct was "morally culpable”. In effect, AHP asks us to discredit the application of Illinois law by the Illinois courts in upholding the jury’s award of punitive damages. We decline to do so. We have no reason to question the regularity of the Illinois proceedings or the legitimacy of the Illinois judgment. Indeed, it would be contrary to precedent and to our policy of respecting the judicial proceedings of sister States (see, Matter of Farmland Dairies v Barber, 65 NY2d 51, 55-56; Greschler v Greschler, 51 NY2d 368, 376; Restatement [Second] of Conflict of Laws § 98; see also, Hinchey v Sellers, 7 NY2d 287, 293-296; cf., Matter of Halyalkar v Board of Regents, 72 NY2d 261, 266-270) to undertake the collateral factual review which defendant requests.
Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this court pursuant to section 500.17 (22 NYCRR 500.17) of the Rules of Practice of the New York State Court of Appeals, and after hearing arguments by counsel for the parties and consideration of the briefs and record submitted, the certified question is answered in the negative.
Judges Simons, Kaye, Alexander, Titone and Bellacosa concur; Chief Judge Wachtler taking no part.
Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this court pursuant to section 500.17 of the Rules of Practice of the New York State Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the negative.

 Home (a New Hampshire corporation) and AHP (a Delaware corporation) both have their principal offices and places of business in New York. For purposes of this action, Home and AHP are considered New York residents.