**Moises DERECHIN, Plaintiff–Appellant,**

v.

**STATE UNIVERSITY OF NEW YORK, et al., Defendants–Appellees.**

**Moises DERECHIN, Plaintiff,**

v.

**STATE UNIVERSITY OF NEW YORK, et al., Defendants,**

**Allithea Lango Killeen, Cross–Appellant,**

**Clerk, U.S. District Court, Western District of New York, Cross–Appellee.**

**Nos. 868, 877, Docket 91–7512, 91–7872.**

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1992.

Decided April 28, 1992.

Nicholas J. Sargent, Paul D. Weiss, Mahoney, Berg & Sargent, Buffalo, N.Y., (on the brief) for plaintiff-appellant.

Peter H. Schiff, Deputy Sol. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen., Peter G. Crary, John McConnell, Asst. Attys. Gen., on the brief), for defendants-appellees and cross-appellant.

Before: NEWMAN and KEARSE, Circuit Judges, and CEDARBAUM, District Judge.*

JON O. NEWMAN, Circuit Judge:

This appeal presents the novel issue whether a district judge may require that the burden of a Rule 11 sanction remain upon a lawyer employed by a state, notwithstanding a state statute that affords the lawyer indemnification. The issue

---

arises on a cross-appeal by Allithea Lango Killeen, a New York assistant attorney general, from the August 7, 1991, order of the District Court for the Western District of New York (John T. Elfvin, Judge) imposing a $250 sanction under Rule 11 of the Federal Rules of Civil Procedure and prohibiting her from receiving indemnification normally available under N.Y. Public Officers Law § 17 (McKinney 1988 & Supp. 1992). The sanction was imposed in the course of litigation brought by Moises Derechin, a native of Argentina and a tenured associate professor at the State University of New York at Buffalo ("SUNY–Buffalo"), against the State University of New York, SUNY–Buffalo, and various State employees. Derechin alleged employment-related discrimination on the basis of national origin in violation of federal and state law. The underlying litigation resulted in a summary judgment, entered April 23, 1991, in favor of the defendants. Since Derechin's appeal from that judgment presents no issue of substance, we affirm the judgment for the reasons set forth in Judge Elfvin's opinion. With respect to Killeen's cross-appeal, we affirm the order of August 7 for the reasons explained in this opinion.

### Facts

Derechin brought this litigation in 1989, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Due Process Clause of the Fourteenth Amendment, 42 U.S.C. § 1983, and Article I, section 6 of the New York Constitution arising out of his employment as an Associate Professor in the Department of Biochemical Pharmacology in the School of Pharmacy at SUNY–Buffalo. During the course of pretrial discovery, Allithea Lango Killeen, counsel for the defendants, and Nicholas Sargent, counsel for the plaintiff, developed a hostile relationship. A major reason for the friction was Sargent's refusal to return to Killeen an original file she had provided to Sargent on March 26, 1990. Sargent had claimed that he needed the file immediately and had pledged to copy, mark, and return it. Relying on this pledge, Killeen neglected to make a copy of her file. In response to repeated requests to return the file, Sargent agreed to return it on the condition that Killeen obtain the signed deposition of two defendants.

The discord increased when Sargent cancelled the deposition of the plaintiff, one day before it was scheduled. Killeen had previously informed Sargent that she planned to file a motion for summary judgment following the deposition. In his letter canceling the deposition, Sargent gave no explanation for his client's unavailability, but noted that several requests for production of documents had been "ignored." Complicating matters was the fact that the cutoff date for discovery was September 14, only four days after the scheduled date for plaintiff's deposition. On September 14, Killeen filed a motion to compel the deposition, which the Court denied on October 22.

This background set the stage for the episode that would give rise to the imposition of the Rule 11 sanction on Killeen. Pretrial statements were required to be filed by November 1, 1990. At that time, Sargent continued to refuse to return the documents, and still refused to produce Derechin for deposition. After discussing the matter with her supervisor at the Buffalo office of the New York State Department of Law, Killeen filed her pretrial statement. The pretrial statement exceeded twenty-five pages and listed approximately 200 witnesses, most of whom were identified as having knowledge of "Derechin's performance and/or Dept. expectations." The list contained persons from many different departments at SUNY–Buffalo, and described each person as "Professor" even though many witnesses were administrative personnel such as secretaries and stenographers. The trial was estimated by counsel not to exceed five days, including jury selection.

Derechin moved for an order striking the defendants' list of "possible witnesses," precluding the introduction of "possible exhibits," and granting sanctions, costs, and attorney's fees incurred in bringing the sanctions motion. The defendants cross-moved for sanctions pursuant to Fed.

R.Civ.P. 6, 11, and 37, alleging that Derechin's sanctions motion was frivolous and that he had frivolously opposed their motion for summary judgment.

By order dated April 22, 1991, the Court granted defendants' motion for summary judgment and by order dated April 23, 1991, granted the portion of Derechin's motion requesting sanctions. Pursuant to 28 U.S.C. § 1927, the Court ordered defendants' counsel to pay the costs and fees incurred by Derechin in preparing the sanctions motion, and imposed an additional $250 sanction, pursuant to Fed.R.Civ.P. 11, for the filing of the pretrial statement. Because the Court had dismissed the underlying claim on summary judgment, it dismissed as moot the request to strike the witness list and to exclude certain exhibits. On the cross-motion, Judge Elfvin imposed a $50 fine, pursuant to Rule 11, on attorney Sargent for his refusal to return the file.[1]

On August 7, 1991, the Court denied the defendants' motion for relief from the order imposing sanctions on their counsel. In the motion, defendants' counsel explained that her efforts to prepare for trial had been frustrated by her inability to depose the plaintiff and to recover the loaned documents. Therefore, she contended, she listed 200 witnesses in order to protect her clients' interests. The Court upheld the Rule 11 sanction, finding that Killeen's conduct was "objectively unreasonable and vexatious." Because Killeen's explanation had not been introduced in opposition to the initial sanctions motion and did not constitute newly discovered evidence, the Court declined to consider the evidence to rebut its finding of bad faith as to the section 1927 sanction. Nevertheless, the Court "absolved" defense counsel of the section 1927 sanction because plaintiff's counsel had submitted an untimely affidavit of fees and costs unaccompanied by contemporaneous time records. Finally, Judge Elfvin imposed the additional requirement that defense counsel pay the $250 Rule 11 sanc-

tion "personally and without reimbursement from a client or clients or employer." On August 29, 1991, the Court modified the order in a manner not material to this appeal.

### Discussion

Assistant Attorney General Killeen raises three contentions on her cross-appeal. First, she contends that the $250 Rule 11 sanction was beyond the Court's discretion. Second, she contends that the Court failed to make factual findings adequate to support the imposition of the sanction. Third, she contends that the Court's order unlawfully precludes her from exercising her statutory right to seek indemnification under N.Y. Public Officer Law § 17, and conversely precludes the State from exercising its statutory duty under Public Officer Law § 17 to determine whether it should indemnify Killeen.

 A. *Was the Rule 11 sanction within the Court's discretion?* Killeen contends that the Court exceeded its discretion in imposing the Rule 11 sanction. We disagree. In determining whether a signer has violated Rule 11, a district court applies an objective standard of reasonableness. *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991). While this Court reviews the imposition of Rule 11 sanctions under an abuse of discretion standard, we remain "mindful that a material error of law or a 'clearly erroneous assessment of evidence' is an abuse of discretion." *Id.* (citing *Cooter & Gell v. Hartmax Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990)).

 Though conceding that her actions were "ill-advised" and not directly disputing the finding that her filing of the pretrial statement was objectively unreasonable, Killeen argues that the sanction order was arbitrary and capricious because it inconsistently and disproportionately allocat-

---

**1.** This sanction should have been imposed under section 1927 rather than Rule 11. *See McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17 (2d Cir.1990). Sargent's failure to return the file did not violate the certification requirement of Rule 11. Because Sargent has not appealed his sanction, we need not reach the question whether his conduct multiplied the proceedings "unreasonably and vexatiously" so as to warrant a sanction under section 1927.

ed amounts of sanctions between Killeen and Sargent. In imposing a $50 sanction against Sargent, the Court explained that his conduct "is *as disruptive as* that of defendant's counsel and appears to have been done vexatiously as well" (emphasis added). Killeen contends that despite this finding of equal culpability, the Court imposed only a $50 sanction on Sargent while imposing a $250 sanction on her. However, the "as disruptive as" characterization did not oblige the Court to impose precisely equal sanctions upon the two attorneys. And it was well within the Court's discretion to impose a $250 sanction against Killeen for filing the pretrial statement containing over 200 witnesses. Such a filing was not objectively reasonable and was plainly a harassing tactic, undertaken in retaliation for what she perceived was harassment by opposing counsel. Perhaps fire may be effectively used to fight fire in some circumstances, but not in a courtroom when the "fire" is adversary counsel's improper behavior. Counsel enduring such tactics has an adequate arsenal of available remedies, including a request for sanctions. Retaliating with sanctionable conduct is not a permissible response. Killeen's filing merited the modest sanction that was imposed.

■ B. *Was the District Court's fact-finding adequate to support the Rule 11 sanction?* Killeen argues that the District Court did not make adequate findings of fact and imposed personal liability "suddenly and without explanation in the decretal paragraph and last sentence of the order." Though findings are required prior to imposition of Rule 11 sanctions, *see Sanko S.S. Co., Ltd. v. Galin,* 835 F.2d 51, 53 (2d Cir.1987), we think Judge Elfvin adequately supported his order with respect to Atty. Killeen. He sufficiently indicated why he concluded that the filing of a pretrial statement listing 200 witnesses, some with incorrect designations, was unreasonable. And it is evident, without further details, why he concluded that the modest sanction he imposed should be borne solely by the lawyer, without reimbursement. Sanctions are properly imposed solely on the attorney "where a represented party either did not

knowingly authorize or participate in the filing of a paper that violated Rule 11...." *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1474 (2d Cir.1988), *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). The nature of defendants' counsel's pretrial tactics readily support the inference that her clients did not knowingly authorize or participate in the filing of the pretrial statement.

C. *Did the District Court exceed its authority by precluding reimbursement of a publicly employed attorney as permitted under state law?* In its August 7 order, the District Court amended its April 23 order to require that the Rule 11 sanction against Killeen be paid "personally and without reimbursement from a client or clients or employer." Killeen maintains that the District Court abused its discretion in imposing the restriction on reimbursement without considering principles of comity and the indemnity provision of New York Public Officers Law § 17 (McKinney 1988 & Supp.1992). She does not dispute that a district court has power to preclude a state-employed lawyer from obtaining reimbursement under state law, but contends that such a prohibition "should be reserved for only the most egregious instances of attorney misconduct." Brief for Cross–Appellant at 38.

Section 17 of the New York Public Officers Law obliges the State of New York to indemnify its public employees for actions taken within the scope of their employment:

The state shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court, or in the amount of any settlement of a claim, or shall pay such judgment or settlement; provided, that the act or omission from which such judgment or settlement arose occurred while the employee was acting within the scope of his public employment or duties; the duty to indemnify and save harmless or pay prescribed by this subdivision shall not arise where

the injury or damage resulted from intentional wrongdoing on the part of the employee. N.Y.Pub.Off.Law § 17(3)(a) (McKinney 1988 & Supp.1992). The indemnity provision operates as a form of insurance for New York's public officers.[2] Because New York acts as an insurer through the indemnity provision, its attorneys are neither required nor encouraged to carry personal liability insurance. The District Court's Rule 11 order differs from the imposition of personal liability in the private context in that New York State is not only Atty. Killeen's client (in effect, though not technically) but also acts, through the indemnity provision of section 17, as her malpractice insurance carrier.

We consider first the exercise of the District Court's discretion to prohibit indemnification in general and then consider the special issue posed by the fact that Killeen is a state-employed lawyer who seeks indemnification from New York State. The case law to date appears to have considered the issue of indemnification only in the context of allocating a Rule 11 sanction between lawyer and client. By its terms, Rule 11 empowers federal courts to sanction "the person who signed [the paper], a represented party, or both." Accordingly, this Court has held that federal courts have "unquestioned authority" to impose a Rule 11 sanction on the lawyer rather than the client. *Farino v. Walshe*, 938 F.2d 6, 8 (2d Cir.1991) (citing 28 U.S.C. § 1651 (1988)); *see Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Eastway Construction Corp. v. City of New York*, 637 F.Supp. 558, 570 (E.D.N.Y.1986), *modified*, 821 F.2d 121 (2d Cir.), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Courts imposing a sanction upon an attorney "personally," *see, e.g., Acevedo v.*

*I.N.S.*, 538 F.2d 918, 919 (2d Cir.1976) (Fed. R.App.P. 38 sanction) perhaps assume that this direction implies a prohibition upon reimbursement from the client, pursuant to a prior or subsequent arrangement between lawyer and client. Some courts have gone beyond this assumption and have explicitly prohibited reimbursement of a Rule 11 sanction by the client. *See Borowski v. DePuy, Inc.*, 850 F.2d 297, 305 (7th Cir. 1988); *Huettig & Schromm, Inc. v. Landscape Contractors Council*, 582 F.Supp. 1519, 1522 (N.D.Cal.1984), *aff'd*, 790 F.2d 1421 (9th Cir.1986); *Wold v. Minerals Engineering Co.*, 575 F.Supp. 166, 168 (D.Colo.1983); *see also Farino v. Walshe*, 938 F.2d at 8 ("The Court's unquestioned authority to impose a Rule 11 sanction and to determine that the sanction should be borne by the lawyer and not the clients obviously included the authority to make the express terms of the sanction order effective").

Though the authority to prohibit reimbursement from a client would seem to include the authority to bar reimbursement from any source, including insurance and employer indemnification, the matter merits further consideration. The Supreme Court has made it clear that the "central goal" of Rule 11 is deterrence. *Cooter & Gell v. Hartmarx Corp.*, 110 S.Ct. at 2454. In *Pavelic & LeFlore v. Marvel Entertainment*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), the Court recognized that the imposition of Rule 11 sanctions on the signing attorney's law firm would better guarantee reimbursement to litigants. Nevertheless, the Court reversed the imposition of sanctions on the signing attorney's law firm, noting that the purpose of Rule 11 "is not reimbursement but 'sanction'; and the purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility." *Id.* at 126, 110 S.Ct. at 459. *Pavelic & LeFlore* explained that an interpretation of

---

**2.** State employees do not automatically receive indemnification under section 17. The statute requires that notice of any claims be given to the Office of the Attorney General. N.Y.Pub. Off.Law § 17(4) (McKinney 1988 & Supp.1992). The employee must provide full cooperation in his or her defense. *Id.* The Attorney General

may ascertain when representation by his office would not be appropriate. *Id.* § 17(2)(b). In addition, the Attorney General is required to review and approve any proposed settlement that may be subject to indemnification by the State, *id.* § 17(3)(b), as well as final judgments to be paid by the comptroller, *id.* § 17(3)(d).

the Rule disallowing an attorney to shift the sanction to his firm would establish "greater economic deterrence upon the signing attorney." *Id.* at 127, 110 S.Ct. at 459. More recently, in *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* —— U.S. ——, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991), the Court further emphasized the deterrent aspect of the Rule in rejecting the claim that Rule 11 created a federal common law of malicious prosecution. The Court again stressed, "The main objective of the Rule is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses." *Id.* 111 S.Ct. at 934.

The Supreme Court's recent teachings on Rule 11 suggest that the same policy considerations that have persuaded many states to prohibit the insurability of punitive damages as a matter of public policy apply in the context of Rule 11. Eighteen states, including New York, have held that insurance policies covering punitive damages assessed directly on the defendant are void as a matter of public policy. *See* Richard L. Blatt, Robert W. Hammesfahr, and Lori S. Nugent, *Punitive Damages: A State by State Guide to Law and Practice* § 5.3 (1991); *Home Insurance Co. v. American Home Products Corp.,* 75 N.Y.2d 196, 201, 551 N.Y.S.2d 481, 484, 550 N.E.2d 930, 933 (1990) (public policy against insurability of punitive damages for gross negligence or conscious disregard of rights of others); *Public Service Mutual Insurance Co. v. Goldfarb,* 53 N.Y.2d 392, 400, 442 N.Y.S.2d 422, 426–27, 425 N.E.2d 810, 814–15 (1981) (insurance policy between two private parties); *Hartford Accident and Indemnity Co. v. Village of Hempstead,* 48 N.Y.2d 218, 422 N.Y.S.2d 47, 397 N.E.2d 737 (1979) (public policy proscribes insurance coverage of punitive damages available under section 1983). Similarly, New York public policy prohibits a municipality from indemnifying an employee for punitive damages, pursuant to section 18 of the Public Officers Law. *McKever v. Vondollen,* 681 F.Supp. 999, 1004 (N.D.N.Y.1988) (awarding attorney's fees under 42 U.S.C. § 1988 (1988) to plaintiff and imposing fees arising from punitive damages hearing on individual defendant without reimbursement from municipality). *But see* N.Y.Gen.Mun.Law §§ 50–*l* (requiring Nassau County to indemnify its police for "punitive or exemplary damages"), –m (same for Suffolk County), –n (same for other peace officers of Nassau County) (McKinney 1986 & Supp.1992).

A major consideration supporting this rule is that the deterrent effect of punitive damages would be diluted if the defendant were allowed to pass on the burden of such damages to his insurer. In the leading case of *Northwest National Casualty Co. v. McNulty,* 307 F.2d 432 (5th Cir.1962), the Court held that punitive damages were not insurable under Florida and Virginia law. Judge Wisdom identified a number of societal interests advanced by the rule against insurability, notably that insurance against punitive damages weakened the deterrent effect of such awards. *Id.* at 441–42. In part on this ground, the public policy of many states prohibits insurance for punitive damages even though the proscription increases the risk that some claimants will not recover the full amount of their punitive damage award. *See id.* at 443, 444–45 (Gewin, J., concurring).

▮ This reasoning is persuasive in the instant case. The availability of insurance for Rule 11 sanctions might increase the possibility for full recovery of attorney's fees, but would weaken the deterrent effect of the sanction by allowing the sanctioned attorney to shift the burden of the sanction. Deterrence would be undermined if district courts could not impose Rule 11 sanctions without the possibility of indemnity—whether from a client, an employer, or an insurer. We therefore hold that a district court may, within its sound discretion, impose Rule 11 sanctions on an attorney without the possibility of reimbursement from any source, including insurance and employer indemnification.

▮ In so holding, we recognize that the imposition of personal liability for Rule 11 sanctions, without indemnification, could entail some risk of chilling zealous advocacy. But we think that risk is adequately

minimized by the standards of Rule 11, so long as the amount insulated from indemnification is a sum appropriate to the court's objective in deterring the attorney's conduct. In imposing Rule 11 sanctions, a court examines the objective reasonableness of the person signing the papers. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 111 S.Ct. at 932–33; *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1344 & n. 3 (2d Cir.1991). Sanctions shall be imposed where, "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Construction Corp. v. The City of New York*, 762 F.2d 243, 254 (2d Cir.1985). The reasonableness of the signer's conduct is determined by "focusing on the situation existing when the paper was signed." *United States v. International Brotherhood of Teamsters*, 948 F.2d at 1344. Although a violation of Rule 11 may be imposed without the finding of moral culpability required for punitive damages, or even of bad faith as required by section 1927, the objective reasonableness requirement will normally suffice to protect against the risk of chilling zealous advocacy. And a prohibition on indemnification will not significantly enhance that risk so long as the amount of the sanction is appropriate with due regard to the nature of the infraction and the circumstances of the attorney. In this case, with an assessment as modest as $250, no detailed inquiry concerning Atty. Killeen's finances was needed to assure that such a sanction was not beyond the level at which a prohibition on indemnification might exceed the district court's discretion.

Though the cross-appellant refers to principles of comity in challenging the bar to indemnification, she does not contend that there are either constitutional or prudential obstacles to the District Court's application of its order to a state-employed lawyer. Instead, she argues only that a prohibition against indemnification for a state-employed lawyer should be reserved for egregious misconduct. We disagree. In the first place, there is a substantial question whether section 17 would be applicable to misconduct of the sort described by the cross-appellant. By its terms section 17 does not provide indemnification for any "intentional wrongdoing." More fundamentally, though we recognize the potential Tenth Amendment limitations on federal action that impairs a state's ability to determine the qualifications of persons holding "important nonelective executive" positions, *see Sugarman v. Dougall*, 413 U.S. 634, 647, 93 S.Ct. 2842, 2850, 37 L.Ed.2d 853 (1973), we see no serious risk that a modest Rule 11 sanction, imposed on a state lawyer without possibility of indemnification, will impair a state's ability to perform its essential functions. Without determining at what larger amount a bar to indemnification with respect to a state lawyer would implicate comity concerns sufficiently to exceed a district court's discretion, we have no doubt that such concerns do not arise when the burden of a $250 sanction is directed to fall solely on a state-employed attorney litigating in a federal district court.

The judgment of the District Court and its supplemental orders are affirmed.