Patricia GERESSY and Patricia Geressy as Administratrix of the Estate of Thomas Geressy, Jeannette Rotolo and John William Rotolo, and Jill M. Jackson and Thomas M. Farrell, Plaintiffs,

v.

DIGITAL EQUIPMENT CORPORATION, Defendant.

No. 94–CV–1427 (JBW).

United States District Court, E.D. New York.

Jan. 13, 1997.

Kenneth J. King, Craig M. Deitelzweig, Beatie, King & Abate, New York City, for Defendant.

Steven Phillips, Stephenie Lannigan, Levy Phillips & Konigsberg, New York City, for Plaintiffs.

MEMORANDUM ON THE JURY
CHARGE ON PUNITIVE
DAMAGES

WEINSTEIN, Senior District Judge:

## I. INTRODUCTION

Both defendant and plaintiffs seek post-verdict relief. In this memorandum, only the punitive damage issue is addressed. Over the course of almost four weeks, a jury heard evidence and arguments in a case involving three plaintiffs who had allegedly suffered from repetitive stress injuries as a result of using defendant's computer equipment. Defective design and failure to warn were the bases for the suit. Their spouses filed independent loss of consortium claims.

The case was divided into two independent phases, before the same jury, one for compensatory damages and one for punitive damages.

The jury returned substantial compensatory verdicts for plaintiffs on the failure to warn and loss of consortium claims. The second phase began at once with brief evidence presented on defendant's value and business losses. A short argument and charge followed.

Recent developments in the law of damages and a lack of clarity as to the appropriate standard of proof in New York for punitive damages required a modification of the New York punitive damage charge, New York Pattern Jury Instruction 2:275. *See Appendix* for the punitive damage charge used.

## II. *BMW OF NORTH AMERICA V. GORE*

Interpreting federal constitutional limitations on state punitive damage awards, the Supreme Court in *BMW of North America v. Gore,* —— U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), set out three factors for determining whether a punitive damage award violates "[e]lementary notions of fairness enshrined in our constitutional jurisprudence," *Gore,* supra, —— U.S. ——, ——, 116 S.Ct. 1589, 1598:

Three guideposts ... [are used to determine whether a punitive damage award] is grossly excessive: the degree of reprehensibility of the nondisclosure; the disparity between the harm or potential harm suffered by [the plaintiff] and his punitive damages award; and the difference between this remedy and the civil penalties

authorized or imposed in comparable cases.

*Gore,* supra, —— U.S. ——, ——, 116 S.Ct. 1589, 1598. These three *Gore* factors—reprehensibility, disparity between harm and the punitive damage award, and civil and criminal remedies available for similar actions—are now the touchstone in evaluating a punitive damage award under the Constitution.

◼ An additional independent limitation on punitive damage awards flows from a principle of our federal system that state legislation, state policy, and judicial development of state law can only be directed at activity within the state. A "State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasers' lawful conduct in other states." *Gore,* supra, —— U.S. ——, ——-——, 116 S.Ct. 1589, 1596–97 (citations omitted). Thus punitive damage can not be awarded to punish or deter acts in other states which do not affect the forum state.

In developing a charge a primary question is whether to present the *Gore* factors to jurors to guide them, or to use *Gore* only to review a jury punitive damage award, if any, after the fact. In *Lee v. Edwards,* 101 F.3d 805 (2nd Cir.1996), the Second Circuit, relying both on *Gore,* and *Gasperini v. Center for Humanities, Inc.,* —— U.S. ——, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), implied that whether or not a punitive damage award is excessive is a question of law for the courts. Quoting *Gasperini,* the Second Circuit noted that,

'[S]urely there must be an upper limit [to punitive damage awards], and whether that has been surpassed is *not a question of fact* with respect to which reasonable men may differ, *but a question of law.'* *Lee,* supra, 101 F.3d 805, 808–09 (quoting *Gasperini v. Center for Humanities, Inc.,* —— U.S. ——, ——-——, 116 S.Ct. 2211, 2223–24, 135 L.Ed.2d 659 (1996), quoting *Dagnello v. Long Island R.R. Co.,* 289 F.2d 797, 806 (2d Cir.1961)) (emphasis added). The Second Circuit went on to explain that the "three [*Gore*] guideposts ... should assist us in application of our standard by which we deem excessive a punitive damage

award ... 'shocks our judicial conscience.' " *Lee,* supra, 101 F.3d 805, 808–09 (citations omitted).

◼ The Second Circuit's approach to the *Gore* factors, as well as its conclusion that whether a punitive damage award is excessive is "a question of law," does not require district courts to ignore the *Gore* factors in charging the jury. If the jury is to accomplish its task under the Seventh Amendment, it is entitled to be informed of its role.

◼ The charge should therefore, arguably, include all three *Gore* factors (reprehensibility; disparity between harm and the punitive damage award; and civil and criminal remedies available for similar actions). Nevertheless there are too many complicating and prejudicial factors in asking a lay jury to consider the third element, potential legal penalties in other civil and criminal actions. Reference to possible criminal (and even administrative penalties such as those of the Occupational Safety and Health Act (OSHA) of which the jury was aware) and to other civil awards, were therefore omitted from the *Gore* portion of the charge. On this point it was simplified to read:

In fixing the amount, if any, you may consider the assets of defendant, what is reasonably required to vindicate New York State's legitimate interests in punishment and deterrence, if any, above the amount of civil damages awarded, the degree of reprehensibility, if any, the disparity between the harm or potential harm suffered by plaintiffs and the difference between punitive damages and the civil awards in this case, and how egregious the conduct of defendant was compared to that of others in its position.

This language adequately expresses the law as set out in *BMW of North America v. Gore,* —— U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), without requiring the jury to make complex determinations and calculations involving civil and criminal law.

At the request of defense counsel, and in light of the *Gore* Court's discussion of the importance of concerns of state sovereignty (*BMW of North America v. Gore,* —— U.S.

——, ——–——, 116 S.Ct. 1589, 1596–97, 134 L.Ed.2d 809 (1989)), the court told the jury that punitive damages could only be awarded to further the interests of people within the state of New York. Immediately following the passage from the jury charge quoted above, the court instructed the jury that it was "not authorized to impose punitive damages to protect people outside of the State of New York."

### III. New York Law

In this diversity action, New York substantive law controlled. The *Gore* factors were therefore melded into the standard New York punitive damage jury charge set out in the New York Pattern Jury Instruction 2:275, based on New York's substantive law.

### A. Burden of Proof

New York law on burden of proof in deciding punitive damages is unclear. Many New York courts have described the conduct that merits the imposition of punitive damages without deciding what is the necessary burden of proof for determining whether such conduct existed. In *Home Insurance Company v. American Home Products Corp.*, 75 N.Y.2d 196, 550 N.E.2d 930, 551 N.Y.S.2d 481 (1990), for example, the court described "the conduct which justifies an award of punitive damages" as "conduct having a high degree of moral culpability which manifests a 'conscious disregard for the rights of others or conduct so reckless as to amount to such disregard,'" *Home Insurance,* supra, 75 N.Y.2d 196, 203, 550 N.E.2d 930, 933, 551 N.Y.S.2d 481, 485 (1990) (citations omitted); see also *Kramer v. Showa Denko K.K.,* 929 F.Supp. 733, 742 (S.D.N.Y.1996) (quoting the same passage). Such language suggests a relatively high substantive standard, but does not determine the level of burden of proof.

Courts that have addressed the burden of proof question directly have tended to support a *preponderance* standard. The Second Circuit has written that,

> though we have not explicitly ruled in the past that a "preponderance" burden of proof satisfies due process, we believe that our toleration of that burden in numerous punitive damages cases makes it inappro-

priate for us to discard it now on constitutional grounds, just as we declined to abandon traditional formulations of the standards governing punitive damage awards in *Racich.*

*Simpson v. Pittsburgh Corning Corp.,* 901 F.2d 277, 282–283 (2nd Cir.1990) (citations omitted). *See also United States of America v. Hooker Chem. & Plastics,* 850 F.Supp. 993, 1003 (W.D.N.Y.1994); *In re Seventh Judicial District Asbestos Litigation,* 190 A.D.2d 1068, 1068, 593 N.Y.S.2d 685, 686 (4th Dept 1993).

■ This preponderance standard is appropriate since the substantive standard for punitive damages is already so high. Placing a higher than preponderance standard on a rule already heavily balanced against such damages would be analogous to wearing both suspenders and a belt—not necessarily a bad idea even if it is less than sartorially or legally elegant. In addition, since the jury has already been instructed on the preponderance standard in the compensation phase of the trial, it is less likely to be confused about the applicable burden.

■ Nevertheless because of the lack of clarity in New York law on the burden of proof standard, the jury was first charged with a clear and convincing standard. It was then asked to deliberate a second time applying a preponderance of the evidence standard. Under both standards, the jury decided that punitive damages were not warranted.

### IV. Tax Consequences

The federal government does not tax compensatory damage awards. 26 U.S.C.A. § 104(a)(2). The jury was made aware of the effect of this provision in the initial charge:

> If your verdict is in favor of any of the plaintiffs, she (or they) will not be required to pay income taxes on the awards and you must not add to or subtract from any award any amount on account of income tax.

Because plaintiffs' counsel believed that a punitive award, in contrast, might be subject to federal and state taxes, he asked that the

jury be so instructed. The court declined to do so.

A few days after this court charged the jury on punitive damages, the Supreme Court resolved a circuit split in favor of the majority position that punitive damage awards are taxable under 26 U.S.C. § 104(a)(2) (1988). *O'Gilvie v. United States,* — U.S. —, —–—, 117 S.Ct. 452, 454–58, 136 L.Ed.2d 454 (1996).

In New York, 20% of punitive damage awards were payable to the state under section 8701 of New York's Civil Practice Law and Rules which was in effect from April 10, 1992 until April 1, 1994. This New York provision is no longer operative.

■ Compensatory and punitive damages serve distinct functions and therefore require different treatment in jury charges. With a compensatory damage award, the focus is on the plaintiff; the compensatory damage award compensates the plaintiff with money damages and (theoretically) places that plaintiff in the same position monetarily that he or she would have been in had the tortfeasor not committed the wrong. A court charging a jury on such damages appropriately gives the jury information that will help the jurors in determining the amount of money that a plaintiff is due, including whether the award is taxable.

Punitive damages, in contrast, are directed at actual and potential egregious wrongdoers. The New York Court of Appeals recently explained the legal principle behind New York punitive damage awards:

> We have consistently adhered to the view that the purpose of punitive damages is solely to punish the offender and to deter similar conduct on the part of others. Punitive damages are not intended to compensate or reimburse the plaintiff.

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.,* 84 N.Y.2d 309, 316, 618 N.Y.S.2d 609, 612, 642 N.E.2d 1065, 1068 (1994) (citations omitted). *See also Home Ins. Co. v. American Home Prods. Corp.,* 75 N.Y.2d 196, 203, 551 N.Y.S.2d 481, 485, 550 N.E.2d 930, 934 (1990) (punitive damages "are intended as punishment for gross misbehavior for the good of the public.... [they are not award-ed] because the plaintiff has suffered any monetary damage for which he is entitled to reimbursement"); *Hartford Accident and Indem. Co. v. Village of Hempstead,* 48 N.Y.2d 218, 226, 422 N.Y.S.2d 47, 53, 397 N.E.2d 737, 743 ("the purpose of punitive damages ... is to punish and to deter others from acting similarly").

■ In calculating a punitive damage award, the jury only needs information on the defendant and the defendant's wrongdoing, in addition to what it has already heard in the compensatory phase of the trial. The tax consequences of a punitive award for the plaintiff or whether the state will share in this amount are irrelevant in determining an appropriate award. If, as in the instant case, the punitive damage issue is kept from the jury until the compensatory issues are decided, there is no basis for arguing that a portion of the punitive award was intended to make up for sparse compensatory damages.

## V. CONCLUSION

No new trial on punitive damage issues is warranted. If there is a reversal on the compensatory damage issue, a new trial on punitive damages should not be granted. *See* Fed.R.Civ.P. 50(a)(1).

## APPENDIX

### Charge on Punitive Damages

Ladies and Gentlemen of the jury:

In addition to damages compensating a plaintiff for her injuries, you may, but are not required to, allow plaintiff punitive damages. The purpose of punitive damages is to punish the defendant for its conduct and to deter defendant and others from committing similar acts. You need not award punitive damages if you find these purposes would not be advanced in this case.

Imposition of punitive damages is entirely discretionary, that means you do not have to award them unless you believe the facts require them.

Do not award punitive damages unless plaintiff has proven by [clear and convincing/a preponderance of the] evidence that Digital's conduct in failing to warn was wan-

ton and reckless or activated by an evil or reprehensible motive. An act is wanton and reckless when it is done in such a manner and under such circumstances as to show heedlessness and utter disregard of the effect on the rights and safety of others flowing from the act, as I have defined act in the main charge which is still before you.

If you determine punitive damages are appropriate, and I am not suggesting that result, you should look to the reprehensibility of the defendant's conduct, whether there was concealment, the duration of the conduct and the existence and frequency of similar past conduct.

In fixing the amount, if any, you may consider the assets of defendant, what is reasonably required to vindicate New York State's legitimate interests in punishment and deterrence, if any, above the amount of civil damages awarded, the degree of reprehensibility, if any, the disparity between the harm or potential harm suffered by plaintiffs and the difference between punitive damages and the civil awards in this case, and how egregious the conduct of defendant was compared to that of others in its position. You are not authorized to impose punitive damages to protect people outside the State of New York.

In the event that you decide to award punitive damages, the lowest amount necessary to accomplish the purposes of punitive damages should be awarded.

If punitive damages are awarded, only a single dollar amount should be found by you.