OPINION OF THE COURT
Barbara R. Kapnick, J.
Plaintiffs Arthur Ross and Dr. Barbara Ross seek to recover compensatory and punitive damages against defendant Louise Wise Services, Inc., a licensed New York adoption agency during *281 the relevant time period, for: (i) wrongful adoption and fraud (first cause of action); (ii) negligence and breach of fiduciary duty (second cause of action); and (iii) intentional infliction of emotional distress (third cause of action).
Plaintiffs claim that defendant agreed in 1960 to represent them in the adoption of “a healthy baby from a normal, healthy family” but instead placed with them an infant — Anthony Ross, who was born in 1961 — with a double family history of paranoid schizophrenia. Plaintiffs further claim that defendant knew about the child’s family history but concealed it from them, misrepresented it and continued to “cover it up” until 1999,[1] despite defendant’s knowledge of the adoptee’s increasing difficulties, his descent into schizophrenia and the break up of plaintiffs’ family, social life and respective careers.[2]
Among other things, there is no dispute that in November 1973, plaintiff Barbara Ross spoke to Barbara Miller, defendant’s Director of Post-Adoption Services from 1960 through 1994, about Anthony and requested that Ms. Miller forward any information pertinent to Anthony’s developmental history to Dr. Stella Chess, a psychiatrist retained by plaintiffs to treat Anthony.
Defendant admits that Ms. Miller sent a letter dated November 19, 1973 to Dr. Chess in response to Barbara Ross’ request. Ms. Miller acknowledged in the letter that she was writing to help Dr. Chess assess “Tony’s continuing difficulties.” However, the letter fails to disclose to Dr. Chess that schizophrenia was, or may have been, in Anthony’s birth family.
Defendant also admits that its own consulting psychiatrist, Dr. Anne-Marie Weil, telephoned Ms. Miller in June 1982 to tell *282 her that she had received a visit from Anthony; that she was very concerned and frightened by his appearance and demeanor; that she felt he was a paranoid schizophrenic, capable of violence; and that she wanted Ms. Miller to be aware of this, should Anthony ever request an appointment at Louise Wise Services.
Defendant further admits that Ms. Miller stated in a letter dated June 29, 1982 to Dr. Weil that she was most appreciative of being cautioned by Dr. Weil about Tony. However, there is also no dispute that neither Dr. Weil nor Ms. Miller ever contacted either Arthur Ross or Barbara Ross to share these concerns.
Defendant now moves for an order (i) granting summary judgment dismissing plaintiffs’ complaint with prejudice; or alternatively, (ii) granting partial summary judgment dismissing plaintiffs’ second and third causes of action as time-barred; (iii) dismissing plaintiffs’ claim for emotional distress and for the recovery of business losses or other losses of income allegedly resulting from that emotional distress, and limiting plaintiffs’ potential recovery of compensatory damages in this action to the extraordinary out-of-pocket expenses of raising plaintiffs’ adopted child to age 21; and (iv) dismissing plaintiffs’ claim for punitive damages.
Summary Judgment
Defendant first moves for summary judgment dismissing plaintiffs’ entire complaint with prejudice on the grounds that defendant at all times acted in accordance with the prevailing standards applicable to social service/adoption proceedings in 1961, which defendant contends did not generally recognize a genetic component to mental illness.[3]
Defendant further argues that the statutes requiring the disclosure of certain information pertaining to family medical history did not go into effect until 1983, and that plaintiffs made no request for background information from 1981 through *283 1999, when defendant fully complied with plaintiffs’ request for disclosure.
However, the Appellate Division, First Department, has already held that plaintiffs in another action based on similar claims of fraud and misrepresentation against the same defendant arising out of a 1966 adoption stated a cognizable cause of action for “wrongful adoption.” (Juman v Louise Wise Servs., 211 AD2d 446 [1st Dept 1995];[4] see also, Jeffrey BB. v Cardinal McCloskey School & Home for Children, 257 AD2d 21 [3d Dept 1999].)
Based on the papers submitted and the extensive oral argument held on the record on January 29, 2003 and February 21, 2003, this court finds that there are at the very least triable issues of fact in this case as to whether or not defendant fraudulently concealed and/or misrepresented material facts at the time of Anthony’s adoption and in subsequent years regarding his family history which preclude the granting of summary judgment on the first cause of action.
Statute of Limitations
Defendant moves, in the alternative, for partial summary judgment dismissing plaintiffs’ second and third causes of action as time-barred by the three-year and one-year statutes of limitations applicable to claims for negligence and intentional torts, respectively.
Plaintiffs oppose this portion of the motion on the ground that the Appellate Division, First Department, held in Juman v Louise Wise Servs. (254 AD2d 72, 73 [1998]), which was commenced in July 1991, that “issues of fact exist as to whether plaintiffs, prior to July 1989, possessed information from which they reasonably could have inferred that defendant had misrepresented the natural mother’s mental condition at the time of the placement, so as to commence the running of the two-year discovery limitations period under CPLR 203 (g).” (Citations omitted.)
However, defendant — which has not moved to dismiss the first cause of action sounding in fraud and wrongful adoption based on the statute of limitations — correctly notes that there is no authority to apply the discovery rule set forth in CPLR 203 *284 (g) to the instant causes of action other than fraud, which was the sole cause of action in Juman.
Plaintiffs argue, in the alternative, that defendant should be equitably estopped from asserting the statute of limitations based on defendant’s alleged fraudulent concealment of Anthony Ross’ family history (see, Simcuski v Saeli, 44 NY2d 442 [1978]).
“A defendant may be estopped from asserting the Statute of Limitations as a defense where he or she has wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats or other misconduct.” (Zoe G. v Frederick F.G., 208 AD2d 675, 675 [2d Dept 1994] [citations omitted].)
The application of the doctrine of equitable estoppel — which is considered an “extraordinary remedy” (see, East Midtown Plaza Hous. Co. v City of New York, 218 AD2d 628 [1st Dept 1995]) — “is triggered by some conduct on the part of the defendant after the initial wrongdoing-, mere silence or failure to disclose the wrongdoing is insufficient (see, Smith v Smith, 830 F2d 11; Simcuski v Saeli, supra)” (Zoe G. v Frederick F.G., supra at 675-676 [emphasis supplied]).
Here, it appears that plaintiffs’ first postadoption contact with defendant (i.e., plaintiffs first contact with defendant after its initial alleged wrongdoing) was in 1970, when the applicable statute of limitations for these claims had already expired. Thus, there is no “evidence that plaintiff was lulled into inaction by defendant in order to allow the statute of limitations to lapse.” (East Midtown Plaza Hous., supra at 628 [citation omitted].)
Thus, the doctrine of equitable estoppel may not be invoked here and this court is constrained to dismiss the second and third causes of action as time-barred.
Limitation of Damages
Defendant next moves for partial summary judgment limiting plaintiffs’ potential recovery of compensatory damages in this action to the extraordinary out-of-pocket expenses of raising plaintiffs’ adopted child to age 21 (after which plaintiffs no longer had a legal obligation to financially support their son). See, Bani-Esraili v Lerman (69 NY2d 807, 808 [1987]) in which the Court of Appeals held in a “wrongful birth” medical malpractice action that the plaintiff could “be compensated only in the amount that represents his legally cognizable injury, namely the increased financial obligation arising from the extraordinary medical treatment rendered the child during minority” (citations omitted).
*285 In Juman v Louise Wise Servs. (254 AD2d at 74), the Appellate Division, First Department, held that
“[w]e agree with the motion court that, as in other fraud actions, compensatory damages in an action for wrongful adoption are limited to damages for pecuniary losses. We note that, in this respect, a wrongful adoption action is analogous to a wrongful life action, in that in either case it is entirely speculative whether the emotional pain sustained by the parent in raising an impaired child outweighs the emotional benefits of the parent-child relationship” (emphasis added and citation omitted).
Plaintiffs argue that this case (in which they alleged claims for negligence and intentional tort, as well as a claim based on wrongful adoption and fraud) is distinguishable because the complaint in Juman consisted of only one cause of action (i.e., for wrongful adoption). However, this argument is now moot since this court has dismissed said additional claims infra.
Accordingly, this court is constrained to limit plaintiffs’ potential recovery of compensatory damages in this case to the extraordinary out-of-pocket expenses of raising Anthony Ross to age 21. (See, DePeigne v Medical Ctr. & Med. & Health Research Assn. of N.Y. City, 251 AD2d 47 [1st Dept 1998].)
Punitive Damages
Finally, defendant moves for an order striking plaintiffs’ demand for punitive damages on the ground that, as a matter of law, there is no basis for an award of punitive damages in this case. Specifically, defendant contends that it acted in what it reasonably believed were the best interests of the adopted child and the adoptive parents, and denies that it acted maliciously or with an intent to deceive or to injure.
Plaintiffs argue in opposition that the acts complained of (including defendant’s issuance of the false report to their son’s psychiatrist in 1973) could be found by a trier of fact to constitute extreme and outrageous conduct which cannot be tolerated in a civilized society.
Justice Edward Lehner held in an unpublished decision dated September 1, 2000 in the Juman case that plaintiffs were entitled to seek punitive damages for defendant’s alleged disregard of its disclosure obligations under Social Services Law § 373-a for the period subsequent to September 1983, the effective date of the amendment setting a standard for disclosure of family history.
*286 However, the Appellate Division, First Department, recently-modified Justice Lehner’s ruling on punitive damages finding that “[d]efendant’s conduct subsequent to September 1983 is irrelevant to plaintiffs’ wrongful adoption claim, since the operative facts are those that occurred at and around the time of the . . . adoption.” (Juman v Louise Wise Servs., 3 AD3d 309, 310 [1st Dept 2004]; see also, Jeffrey BB. v Cardinal McCloskey School & Home for Children, supra at 25.)
In this case, however, plaintiffs’ first cause of action does not merely allege that defendant failed to disclose relevant history at the time of the adoption, but contains allegations of subsequent fraudulent acts, namely, that defendant issued a false report to the adopted child’s treating psychiatrist and subsequently failed to warn plaintiffs that defendant’s own consulting psychiatrist had diagnosed their son as a paranoid schizophrenic, capable of violence.
Thus, the claims asserted in the first cause of action in this case are much more detailed than the facts asserted in the Juman case and clearly distinguish these cases from each other.[5]
Defendant further argues that punitive damages would not be appropriate in this case because defendant now primarily provides foster care services and is no longer involved in private adoptions.
“Punitive damages ordinarily may be awarded only ‘in cases where the wrong complained of is morally culpable, or is actuated by evil or reprehensible motives, not only to punish the defendant, but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future.’ ” (H&R Hats & Novelties v Citibank, 102 AD2d 742 [1st Dept 1984] [citation omitted].)
This court finds that, under the facts presented, a jury could conclude that defendant’s acts were “morally culpable” or “actuated by evil or reprehensible motives” and that punitive damages are warranted to deter other adoption agencies from engaging in similar acts of deceit in the future.
That portion of defendant’s motion seeking to dismiss plaintiffs’ demand for punitive damages is, therefore, denied.

. Plaintiff Arthur Ross contacted defendant after reading an article in the March 14, 1999 issue of the New York Times Magazine which recanted the story of a family named Juman which had adopted a son from defendant and had a similar experience with defendant’s withholding of facts as to the birth-family’s diagnosis of schizophrenia and other mental disorders.

. Plaintiffs claim that due to Anthony’s aggressive and uncontrollable behavior, Barbara Ross became increasingly concerned for her own and her daughter’s safety. As a result, Barbara moved out of the marital residence with their adopted daughter Susan. Arthur Ross and Barbara Ross subsequently divorced in or about 1979. Anthony continued to live with Arthur Ross, while Susan remained with Barbara Ross. Arthur Ross claims that emotional problems stemming from distress over his adopted son’s problems prevented him from taking control of and building up his advertising agency after the death of his senior partner in or about 1980; Barbara Ross claims loss of income beginning in 1987 because of professional contacts she might have made but did not due to emotional distress stemming from her son’s problems.

. Defendant has submitted an affidavit from its expert, Anita Longo Sorenson, a certified social worker, who claims, among other things, that it was “the general opinion and belief of social workers and other professionals in the adoption field in the 1960s and into the early 1980s that nurture played a much greater role than nature in the development of a child”; that “mental illness would not be passed on if a child were placed in a loving environment”; and that “the disclosure of certain information to prospective adoptive parents would interfere with the bonding between adoptive parent and child and prove detrimental to the child, the parents and their relationship.”

. In that case, the adoptive parents claimed that the agency fraudulently misrepresented and refused to disclose to them a significant and severe psychiatric, psychological and medical history of the adopted son’s natural mother and withheld other information which, if they had known, would have resulted in their not adopting the child.

. The evidence submitted by defendant as to the belief and practice of social workers and other professionals in the adoption field during the relevant time period merely raises an issue of fact as to whether or not defendant acted maliciously or with an intent to deceive or to injure.