C.R. v Episcopal Diocese of N.Y. (2025 NY Slip Op 05144)

C.R. v Episcopal Diocese of N.Y.

2025 NY Slip Op 05144

Decided on September 25, 2025

Appellate Division, First Department

Kapnick, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 25, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Cynthia S. Kern
David Friedman Barbara R. Kapnick Julio Rodriguez III Kelly O'Neill Levy

Index No. 950098/21|Appeal No. 3767|Case No. 2023-06087|

[*1]C.R., Plaintiff-Respondent,
v
Episcopal Diocese of New York, Defendant-Respondent-Appellant, The Cathedral School of St. John the Divine, Defendant-Appellant-Respondent.

Defendants' appeal and cross-appeal from the order of the Supreme Court, New York County (Sabrina B. Kraus, J.), entered October 24, 2023, which denied defendant The Cathedral School of St. John the Divine's motion to dismiss all causes of action against it and denied defendant Episcopal Diocese of New York's motion for summary judgment dismissing all causes of action as against it.

Epstein, Becker & Green, P.C., New York (Lori A. Medley and Melissa L. Jampol of counsel), for appellant-respondent.
McGivney, Kluger, Clark & Intoccia, P.C., New York (Charles R. Cordova and Mindy Kallus of counsel), for respondent-appellant.
Herman Law, New York, (Kyle Schiedo, Stuart S. Mermelstein, Ameer Benno and Vanessa A. Neal of counsel), for respondent.

Kapnick, J. 

In 2006, plaintiff was a 13-year-old student at The Cathedral School of Saint John the Divine s/h/a The Cathedral School of St. John the Divine, an Episcopal parochial school located in Manhattan. At the same time, Jose Bravo was an adult employed at the School as a lay teacher (as opposed to an ecclesiastical one). According to plaintiff, Mr. Bravo repeatedly sexually abused and molested her over the course of six months during the 2006 school year, including after the abuse was reported to the School by the parents of plaintiff's friends and a therapist.
In March of 2021, proceeding under a pseudonym for her privacy, plaintiff commenced this revival action pursuant to the Child Victims Act (CPLR 214-g) against the School and the Episcopal Diocese of New York, to recover damages for their negligence in failing to prevent her from being sexually abused by Mr. Bravo.[FN1] The complaint also includes a demand for punitive damages as against each defendant. The School moved for dismissal of plaintiff's complaint in its entirety pursuant to CPLR 3211 (a)(7) and the Episcopal Diocese moved for summary judgment in its favor pursuant to CPLR 3212 (1).[FN2] Supreme Court consolidated defendants' prediscovery motions and denied both motions in their entirety in a single decision and order dated October 17, 2023. For the reasons discussed below, we modify the order appealed from to grant the Episcopal Diocese's motion for summary judgment only to the extent of dismissing plaintiff's demand for punitive damages as against it, and otherwise affirm.
I.
According to the complaint, plaintiff was being bullied at the School for being Hispanic and she came to trust a teacher, Mr. Bravo, because he too was Hispanic. When he would overhear plaintiff being harassed he would intervene on her behalf. Plaintiff further alleges that Mr. Bravo then began "open and notoriously" driving her to and from the School every day and regularly sexually abusing her inside his home and vehicle over the course of six months. The abuse included fondling, touching, oral sex, and vaginal intercourse. According to plaintiff, during this period of time, she would frequently wear Mr. Bravo's jacket throughout the School. Mr. Bravo would also openly flirt with plaintiff on the School's premises throughout the school day, including touching her in sensual and inappropriate ways at an afterschool dance program that Mr. Bravo had created. Plaintiff told her friends of the abuse and the parents of plaintiff's friends, together with a therapist, then reported Mr. Bravo's sexual abuse to the School.
According to the complaint, plaintiff told Mr. Bravo that her friend's therapist had told the School about the abuse and Mr. Bravo threatened plaintiff that her financial aid would be taken away if she told the School anything. As relevant to this appeal, paragraphs 26 and 27 of plaintiff's complaint further allege as follows:
"26. Plaintiff then had separate meetings with her parents, Bravo, and administrators from the School and two other students. Plaintiff did not report the sexual abuse at this time, as she was afraid of the consequences that Bravo threatened her with. The School administrators admonished [plaintiff] for making up such a story.
27. Despite this meeting, no further investigation or action was done regarding Bravo, and he continued to sexually assault and abuse Plaintiff."
Despite the dissent's conclusory characterization, the complaint does not allege any particular response, or lack thereof, by plaintiff's parents. In September 2021, the School moved for dismissal of plaintiff's complaint in its entirety pursuant to CPLR 3211 (a)(7), arguing that (1) plaintiff had not alleged facts to support her negligence cause of action, but rather made speculative conclusions that the School knew, or reasonably should have known, of Mr. Bravo's sexual abuse of the plaintiff or his alleged propensity to sexually abuse children generally; (2) the sexual abuse as alleged by plaintiff occurred off the School's premises, and thus the School no longer owed a duty to plaintiff once she was outside of its custody and control; and (3) the allegations in the complaint were insufficient to support a claim that the School acted so recklessly or wantonly as to warrant an award of punitive damages against it. Plaintiff opposed the School's motion, arguing that the factual allegations pleaded in the complaint are sufficient to warrant her obtaining discovery and support an award for punitive damages.
In February 2023, the Episcopal Diocese moved for summary judgment, echoing the arguments made by the School in its pre-answer motion to dismiss and additionally arguing that (1) the Episcopal Diocese had no relationship with the School; (2) because the Episcopal Diocese did not employ or supervise the School's employees it cannot be held vicariously liable for the actions of Mr. Bravo or the actions or inactions of the School; and (3) punitive damages against the Episcopal Diocese are not warranted, as plaintiff fails to allege any conduct or misconduct by the Episcopal Diocese that rises to that level.
In support of its motion, the Episcopal Diocese submitted an affidavit from its archivist representing that (1) Mr. Bravo had never been employed by the Episcopal Diocese; (2) the Episcopal Diocese has no hiring, firing, or retention power over employees of the School; (3) the Episcopal Diocese did not own, manage, operate, or supervise the day-to-day operations at the School, which includes the activities and supervision of teachers; and (4) the Episcopal Diocese did not hire, train, or supervise any employees at the School. Plaintiff opposed the Episcopal Diocese's motion, arguing that summary judgment was premature and that the Episcopal Diocese had not submitted sufficient proof of the nature of its relationship with the School, or lack thereof. Plaintiff also submitted an affidavit reiterating the factual allegations in her complaint and an affidavit from a former Catholic Priest and theologian who, based on publicly available records, opined that there existed an affiliation and relationship between the School and its employees, including teachers, and the Episcopal Diocese, the precise nature of which would be discussed in specific documents that are not publicly available.
The motion court held that plaintiff had sufficiently alleged that the School had knowledge of Mr. Bravo's propensity to sexually abuse plaintiff, reasoning that plaintiff was not required to provide extensively detailed allegations at the current stage of the litigation, and that the School had not introduced any evidence conclusively establishing that plaintiff's allegations were false. The court further held that plaintiff sufficiently alleged that with Mr. Bravo's inappropriate behavior toward plaintiff occurring both on and off the School's premises, the School knew or should have known of that misconduct and failed to protect plaintiff. The court stated that the events need not only occur on school property in order to prevail on a negligent hiring and supervision cause of action. The court also held that it was unclear whether the School's conduct amounted to egregious and willful misdoing sufficient to justify an award of punitive damages and that the determination was best left for the trier of fact.
With respect to the Episcopal Diocese, the court held that the archivist's affidavit was not documentary evidence and thus was not appropriate proof warranting dismissal under CPLR 3211 (a)(1). The court also held that the Episcopal Diocese's alternate request for relief pursuant to CPLR 3212 was withdrawn.[FN3] The court was silent as to the issue of punitive damages asserted against the Episcopal Diocese, but did definitively state that its motion for summary judgment was denied in its entirety.
II.
The motion court properly denied the School's motion to dismiss plaintiff's negligence claim and her demand for punitive damages. On a motion pursuant to CPLR 3211 (a)(7) to dismiss a complaint for failure to state a cause of action, a court must
"accept the facts as alleged in the complaint as true, accord [the plaintiff] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). "The criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one" (Siegmund Strauss, Inc. v East 149th Realty Corp., 104 AD3d 401, 403 [1st Dept 2013]), and "[w]hether [the] plaintiff can ultimately establish [his or her] allegations is not part of the calculus in determining a motion to dismiss" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]; see also Rubin v Poly Prep Country Day Sch., 227 AD3d 741 [2d Dept 2024]).
A plaintiff bringing a negligence action must allege "a duty owed to the plaintiff by the defendant, a breach of that duty, and injury proximately resulting therefrom" (Moore Charitable Found. v PJT Partners, Inc., 40 NY3d 150, 157 [2023], citing Pasternack v Laboratory Corp. of Am. Holdings, 27 NY3d 817, 825 [2016]; see also Akins v Glens Falls City School Dist., 53 NY2d 325, 333 [1981]). The School argues for dismissal of plaintiff's negligence claim on two grounds. First, the School argues that plaintiff did not sufficiently allege that it knew or should have known of Mr. Bravo's propensity to sexually abuse children, a prerequisite for a negligent hiring, retention, and supervision claim. "When an employer has notice of its employee's propensity to engage in tortious conduct, yet retains and fails to reasonably supervise such employee, the employer may become liable for injuries thereafter proximately caused by its negligent supervision and retention" (Moore, 40 NY3d at 157). Thus, to state her claim, plaintiff must allege, among other elements, that the School knew or should have known of Mr. Bravo's tendency to engage in the tortious conduct. Plaintiff alleged that (1) the abuse "occurred regularly" over a six-month period; (2) Mr. Bravo "openly and notoriously" drove her to and from the School every day; (3) plaintiff wore Mr. Bravo's jacket "throughout the School on a regular basis"; (4) Mr. Bravo "openly touched Plaintiff in sensual and inappropriate ways" at an afterschool dance program; and (5) Mr. Bravo "openly flirt[ed] with Plaintiff during school hours" and touched her in a flirtatious manner in the hallways of the School. Moreover, plaintiff also alleged that the parents of her friends and a therapist reported her sexual abuse to the School, and that the abuse nonetheless continued thereafter.
The School's reliance on the fact that plaintiff denied the sexual abuse claims when the School questioned her about them is misplaced. In contrast to many other revival cases brought under the Child Victims Act, where the alleged abuse took place many decades ago, the sexual abuse alleged by plaintiff in this case occurred during 2006, less than 20 years ago. The standard of care is based on what was customary at the time of the conduct (see Nellenback v Madison County, —NY3d — , 2025 NY Slip Op 02263, *3 n 7 [2025], citing Bethel v New York City Tr. Auth., 92 NY2d 348, 353 [1998] ["The objective, reasonable person standard in basic traditional negligence theory . . . necessarily takes into account the circumstances with which the actor was actually confronted when the [incident] occurred"]). By 2006, the School should have known that a 13-year-old student may deny being sexually abused by a teacher in a single meeting with school administrators out of fear, and that the report of plaintiff's sexual abuse made to the School by the parents of her friends required a more robust response than the School provided. This was far more than just a claim for "running a sloppy investigation" as the dissent suggests.[FN4] Plaintiff's allegations were therefore sufficient to permit an inference that the School, had it exercised ordinary care, should have been aware of Bravo's propensity to engage in sexual abuse (see Fain v Berry, 228 AD3d 626, 627-628 [2d Dept 2024]; MCVAWCD-Doe v Columbus Ave. Elementary Sch., 225 AD3d 845, 847-848 [2d Dept 2024]; Johansmeyer v New York City Dept. of Educ., 165 AD3d 634, 636 [2d Dept 2018]).
"Causes of action alleging negligence based upon negligent hiring, retention, or supervision are not statutorily required to be pleaded with specificity" (Novak v Sisters of the Heart of Mary, 210 AD3d 1104, 1105 [2d Dept 2022]; see also Spira v National Council of Young Israel, 231 AD3d 987, 988 [2d Dept 2024]; Davila v Orange County, 215 AD3d 632, 635 [2d Dept 2023]). Plaintiff alleges that at all relevant times the School knew or in the exercise of reasonable care should have known that Mr. Bravo had a propensity to engage in the sexual abuse of children. Although plaintiff did not set forth specific facts alleging that the School had notice of Mr. Bravo's criminal proclivities at the time it hired him, at this prediscovery stage of the litigation, such information is in the sole possession and control of the movant (see Ark 357 Doe v Jesuit Fathers & Bros., 221 AD3d 493, 493 [1st Dept 2023]; G.T. v Roman Catholic Diocese of Brooklyn, N.Y., 211 AD3d 413, 413 [1st Dept 2022]). Therefore, dismissal was properly denied on this ground as "facts essential to justify opposition may exist but cannot then be stated" (CPLR 3211 [d]).
Second, the School argues that plaintiff's negligence claim should be dismissed because all of the sexual abuse alleged by plaintiff occurred off the School's premises — namely, in Mr. Bravo's car or home, when plaintiff was no longer in the School's custody— and therefore the School could not have owed a duty to plaintiff. Generally, "[a] school 'has a duty to exercise the same degree of care toward its students as would a reasonably prudent parent, and will be held liable for foreseeable injuries proximately related to the absence of adequate supervision'" (J.B. v Monroe-Woodbury Cent. Sch. Dist., 224 AD3d 722, 723 [2d Dept 2024], quoting Destiny S. v John Quincy Adams Elementary Sch., 98 AD3d 1102, 1102 [2d Dept 2012]; see also Mirand v City of New York, 84 NY2d 44, 49 [1994]). The duty owed is "derive[d] from the simple fact that a school, in assuming physical custody and control over its students, effectively takes the place of parents and guardians" (Mirand, 84 NY2d at 49). Thus, "[a] school's custodial duty ceases once the student has passed out of its orbit of authority and the parent is perfectly free to reassume control over the child's protection" (Davila, 215 AD3d at 634, quoting Vernali v Harrison Cent. School Dist., 51 AD3d 782, 783 [2d Dept 2008]).
However, "the school's duty continues and is breached if the student is released 'without further supervision into a foreseeably hazardous setting [the school] had a hand in creating'" (C.M. v West Babylon Union Free Sch. Dist., 231 AD3d 809, 812 [2d Dept 2024], lv dismissed 42 NY3d 1092 [2025], quoting Boyle v Brewster Cent. Sch. Dist., 209 AD3d 619, 621 [2d Dept 2022]; see also Davila, 215 AD3d at 634). Plaintiff's allegations, including inappropriate physical touching during school hours and on school grounds, created the necessary nexus between the School and the off-campus abuse and permitted an inference that the off-campus abuse was foreseeable (see C.M., 231 AD3d at 813; Fain, 228 AD3d at 628; Johansmeyer, 165 AD3d at 636; cf. P.S. v Beck, 233 AD3d 489 [1st Dept 2024][the bare-bones complaint in that case contained no allegation that the teacher ever engaged in inappropriate behavior with the plaintiff while at the school]; Doe v Hauppauge Union Free Sch. Dist., 213 AD3d 809, 810 [2d Dept 2023][similar distinction]).
Plaintiff's demand for punitive damages against the School was also properly sustained at this prediscovery stage of the litigation (see Spira, 231 AD3d at 989). Contrary to the dissent's position, this Court has found claims for punitive damages may be appropriate in certain negligence cases (see e.g. Reid v St. Luke's -Roosevelt Hosp. Ctr., 191 AD3d 545, 547 [1st Dept 2021]; see also B.F. v Reproductive Medicine Assoc. of N.Y., LLP, 136 AD3d 73, 82 [1st Dept 2015], affd 30 NY3d 608 [2017]). Specifically,"[p]unitive damages in actions involving negligent hiring, retention, or supervision generally require conduct evincing a high degree of moral culpability, so flagrant as to transcend simple carelessness, or which constitutes willful or wanton negligence or recklessness so as to evince a conscious disregard for the rights of others" (Pisula v Roman Catholic Archdiocese of N.Y., 201 AD3d 88, 102 [2d Dept 2021] [emphasis added]; see also Home Ins. Co. v American Home Prods. Corp., 75 NY2d 196, 201 [1990]). A "conscious disregard" requires knowledge, or actual notice, of the potential of harm to others (see Pisula, 201 AD3d at 105). The complaint alleges that the School was given actual notice that Mr. Bravo was sexually abusing plaintiff and then failed to adequately investigate the allegations to such an extent that suggests ulterior motives. Further, the dissent is mistaken in its belief that plaintiff's denial of the abuse during a meeting with school administrators negates the actual notice received by the School from the parents of her friends and a therapist, which, by itself, triggered a statutorily required response that the School did not fully implement (see Education Law, article 23-b).
The dissent's reliance on the Court of Appeals' decision in Ross v Louise Wise Servs, Inc. (8 NY3d 478 [2007]) is misplaced. First and foremost, Ross is distinguishable from the case at bar in thatthe Court of Appeals was evaluating the plaintiffs' claim for punitive damages on summary judgment with a fully developed record. In Ross,the Court of Appeals determined that punitive damages could not be recovered from the adoption agency because evidence in the record showed that its failure to reveal the biological parents' mental illness to the plaintiffs was pursuant to a prevailing theory at that time (in 1961), that this information should not be revealed if professionals were unsure if the illnesses were hereditary. The Court noted that many in the adoption field in the 1960's, and even into the 1980's, thought that "mental illness could be avoided if a child were placed in a loving environment and that disclosure of birth parents' emotional disturbances would negatively affect the child's bonding with the adoptive parents" (id at 490), and thus the moral turpitude required for punitive damages was wholly absent.
Additionally, the Court of Appeals in Ross focused on the purpose of punitive damages being to "deter this wrongdoer and others similarly situated from indulging in the same conduct in the future" (id. at 489). Because subsequent statutes required disclosure of such information, and the agency was no longer in the adoption business, the Court found that deterrence considerations did not warrant punitive damages in that case. Applying the same considerations to the instant matter, here the School acted in violation of the very statute intended to ensure its proper reaction to allegations of sexual abuse of one of its students. Further, the School still operates as a school educating children from as young as kindergarten through eighth grade.
Accepting all of the alleged facts as true and affording plaintiff every favorable inference, plaintiff pleads that "[u]pon information and belief, the Defendants continued to retain Bravo without any disclosure of his heinous acts to students and their parents and without any action to prevent or limit his contacts with children in an effort to avoid scandal" and "[a]t all relevant times, Defendants concealed their knowledge that Bravo was unsafe." Anonymous v Streitferdt (172 AD2d 440 [1st Dept 1991]), is distinguishable in that there this Court dismissed the plaintiffs' demand for punitive damages because there was "no allegation that the appealing defendants [religious entities] acted with malicious intent toward the plaintiffs in supervising the activity of defendant Streitferdt" (id. at 441). While Streitferdt also involved allegations of sexual abuse of children, there were no allegations of actual notice of said abuse or Streitferdt's propensity for sexual misconduct to the religious corporation defendants. In the instant matter, the ultimate propriety of punitive damages will depend on the extent of the School's knowledge and the nature of its response, including its involvement in any cover up, facts which will need to be further developed in discovery.
III.
The Episcopal Diocese argues that it did not owe a duty to plaintiff because it did not hire, employ, supervise, or control Mr. Bravo and did not own, operate, or control the School. In Walker v Archdiocese of N.Y., this Court affirmed dismissal of a complaint as against defendant Archdiocese of New York on summary judgment "based upon the unrefuted affidavits of the Pastor of the Church of St. Peter's that the Church owns the premises on which defendant school is located, and of the Secretary of the Archdiocese that the Archdiocese does not own, operate or exercise control over the school" (270 AD2d 127, 128 [1st Dept 2000][emphasis added]) In Walker, the plaintiff merely claimed that "disclosure may reveal some involvement by the Archdiocese" and this Court found that to be too "speculative and insufficient to raise an issue of fact bearing on the Archdiocese's liability" (id.).
In the matter currently before us, plaintiff alleged, among other things, in the complaint that (1) the Episcopal Diocese "controls all Episcopal religious, pastoral, and educational functions in Manhattan, the Bronx, and Staten Island in New York City"; (2) the School "is an Episcopal School operating under the authority and control of the Diocese"; and (3) "the Diocese, as principal, and the School, as agent, were in an agency relationship, such that the School acted on the Diocese's behalf, in accordance with the Diocese's instructions and directions on all matters, including those relating to the hiring of employees and agents." In support of its motion, the Episcopal Diocese submitted an affidavit from its archivist briefly disputing these allegations.[FN5] Such an affidavit is properly considered in support of a motion under CPLR 3211 (a)(7) or on a motion for summary judgment.
However, we find that the subject affidavit was not conclusive, or at least that summary disposition based on the affidavit would be premature at this early stage of the litigation. The Episcopal Diocese did not submit any evidence corroborating the affidavit and plaintiff did submit an affidavit from a former Catholic Priest who has testified as an expert witness in cases involving sexual abuse, suggesting that the relationship between the Episcopal Diocese and the School was in fact closer than the Episcopal Diocese's affidavit indicated, and that the proof of the extent of that relationship was in the sole possession of the defendants. The evidence submitted by plaintiff refutes the affidavit submitted by the Episcopal Diocese, and amounts to more than mere speculation, thus raising an issue of fact requiring the denial of summary judgment dismissing the negligence claims at this time.
Supreme Court's decision was silent as to its reasoning in denying the motion of the Episcopal Diocese to dismiss plaintiff's demand for punitive damages against it. Plaintiff has not pleaded any actual notice to the Episcopal Diocese, either of plaintiff's sexual abuse, Mr. Bravo's propensity for the sexual abuse of children, or even generally of its parochial school teachers sexually abusing students. Plaintiff instead includes a section in her complaint entitled "Concealment of Acts of Sexual Abuse by Priests" which pleads that the Bishop of the Episcopal Diocese knew that "employees/agents of the Diocese under their supervision and control, were grooming and sexually molesting children with whom the priests/brothers would have contact in their ministry, educational, and pastoral functions" and that "[a]t all relevant times, the Bishop knew that this was a widespread, ubiquitous, and systemic problem in the Diocese involving many priests and numerous victims." Mr. Bravo was not a priest or an ecclesiastical teacher; rather, he was a lay teacher. Thus, the complaint fails to allege that the Episcopal Diocese had any actual notice of either plaintiff's sexual abuse, Mr. Bravo's criminal proclivities, or of a systemic problem in the Episcopal Diocese involving the sexual abuse of students by teachers. It therefore cannot be said that plaintiff has pleaded any conduct on behalf of the Episcopal Diocese that evokes a "conscious disregard for the rights of others" so as to warrant punitive damages (see Pisula, 201 AD3d at 105).
Given that punitive damages are "awarded only in 'singularly rare cases,'" they are appropriately reserved for those cases which allege that the defendants, despite having actual knowledge of the perpetrator's propensity for the sexual abuse of children, concealed that knowledge or otherwise knowingly underresponded to that information so as to suggest that they dismissed all concern for the rights of others in favor of their own self-interest (see Streitferdt, 172 AD2d at 441, citing Rand & Paseka Mfg. Co. v Holmes Protection, 130 AD2d 429, 431 [1st Dept 1987], lv denied 70 NY2d 615, [1988]). As plaintiff here has not alleged the knowledge required to infer any improper state of mind on behalf of the Episcopal Diocese, her demand for punitive damages against the Episcopal Diocese should be dismissed (id. at 441).
Accordingly, the order of the Supreme Court, New York County (Sabrina B. Kraus, J.), entered October 24, 2023, which denied defendant The Cathedral School of St. John the Divine's motion to dismiss all causes of action against it and denied defendant Episcopal Diocese of New York's motion for summary judgment dismissing all causes of action as against it, should be modified, on the law, to grant defendant Episcopal Diocese of New York's motion to the extent of dismissing the request for punitive damages against it, and otherwise affirmed, without costs.
All concur except for Friedman and O'Neil Levy, JJ. who dissent in part
in an Opinion by Friedman J.

Friedman, J. (dissenting in part)
 

I concur with the majority's affirmance of the denial of the respective motions by defendants the Episcopal Diocese of New York and the Cathedral School of St. John the Divine to dismiss the complaint insofar as plaintiff seeks compensatory damages. I also concur in the majority's dismissal of the punitive damages claim against the Diocese. However, in my view, the request for an award of punitive damages against the School should have been dismissed, as well. Assuming the truth of the allegations of the complaint, this is not a case where the School's alleged conduct, even if negligent, was "activated by evil or reprehensible motives" (Aronis v TLC Vision Ctrs., Inc., 49 AD3d 576, 577 [2d Dept 2008]), or was "intentional and deliberate, and ha[d] the character of outrage frequently associated with crime" (Prozeralick v Capital Cities Communications, 82 NY2d 466, 479 [1993] [internal quotation marks omitted]).
Plaintiff herself alleges that, after learning that plaintiff had told her friends about the abuse, the School started an investigation, in which plaintiff, when questioned, told the School that she had been lying to her friends. While the School may have been negligent in taking plaintiff's denial of the abuse at face value — although it appears from the complaint that plaintiff's parents did the same — that error of judgment cannot be described as "evinc[ing] a high degree of moral turpitude and demonstrat[ing] such wanton dishonesty as to imply a criminal indifference to civil obligations" (Ross v Louise Wise Servs., Inc., 8 NY3d 478, 489 [2007]), or as "willful or wanton negligence, or recklessness, or . . . [as] a conscious disregards of the rights of others or conduct so reckless as to amount to such disregard" (Chauca v Abraham, 30 NY3d 325, 329 [2017] [internal quotation marks omitted], quoting Home Ins. Co. v American Home Prods. Corp., 75 NY2d 196, 203-204 [1990]).[FN6] In sum, because plaintiff's allegations, if true, do not show "wrongful conduct that goes beyond mere negligence . . . [or] aggravating factors demonstrat[ing] an additional level of wrongful conduct" (id. at 331-332), plaintiff's demand for punitive damages against the School should be dismissed. Instructive here is the Court of Appeals' decision in Ross v Louise Wise Servs. (8 NY3d 478). The plaintiffs in Ross sued the defendant adoption agency for "wrongful adoption/fraud" (id. at 481) based on the agency's concealment, upon the plaintiffs' inquiry, of the history of mental illness in the biological family of the plaintiffs' adoptive child. Although it was established that the Ross plaintiffs "raised a cognizable claim under common-law fraud principles in the adoption setting" (id. at 488), the Court of Appeals held that the existence of a viable claim for fraud — an intentional tort — was not enough to support the plaintiffs' claim for punitive damages, which the Court of Appeals dismissed, because it could not be said that the concealment was "motivated by malice" (id. at 491).[FN7] Thus, the Court of Appeals in Ross held that even evidence showing that the agency had intentionally induced the plaintiffs to adopt the child through fraud did not suffice to demonstrate that the agency's conduct was so culpable as to warrant an award of punitive damages. A fortiori, in this case, where plaintiff sues the School not for an intentional tort, but essentially only for negligence in running a sloppy investigation, the claim for punitive damages should be dismissed, as well (cf. Ernest L. v Charlton School, 30 AD3d 649, 651-652 [3d Dept 2006] [in an action against an agency for its allegedly negligent hiring and supervision of an employee who had sex with a minor resident of the agency's facility, the agency was granted partial summary judgment where, upon learning of an allegation of the employee's misconduct, the agency conducted an investigation and concluded that the allegation was unfounded based upon, inter alia, the minor's denials of the allegation]).[FN8] In concluding that the claim for punitive damages should be sustained as against the School, the majority relies on allegations that are entirely conclusory and unsubstantiated by any factual detail. Specifically, the complaint offers no basis either for the allegation that the School knew of the abuser's propensity to engage in this kind of misconduct or for the allegation that the School prematurely terminated its investigation out of a desire "to avoid scandal and accountability." While I agree that, at the pleading stage, unparticularized allegations as to matters outside the pleader's knowledge are sufficient to sustain a negligence cause of action, it does not follow that conclusory allegations should suffice to support a request for punitive damages. If reciting unsupported bare conclusions were all it took to inject the issue of punitive damages into a lawsuit, every tort action would become a punitive damages case.
The majority highlights its error in sustaining the claim for punitive damages in stating, "Plaintiff's allegations [concerning the School's response to the hearsay reports that she had been abused] were . . . sufficient to permit an inference that the School, had it exercised ordinary care, should have been aware of Bravo's propensity to engage in sexual abuse" (emphasis added). A claim that a plaintiff was injured by a defendant's failure to "exercise[] ordinary care" gives rise to a cause of action against that defendant for negligence (which we are all agreed that plaintiff has stated), not to grounds for seeking punitive damages. I fully agree that the School's alleged response to the reports of plaintiff's abuse by Bravo supports a cause of action for negligence. What I do not see is how, in light of Ross and the other authority I have cited, plaintiff's allegations go beyond ordinary negligence so as to warrant injecting the issue of punitive damages into the case. The implication of the majority's position is that punitive damages may be sought in every case in which the plaintiff has sufficiently alleged that he or she suffered a serious injury as a result of the defendant's failure to exercise "ordinary care." I further note that the majority is inconsistent in sustaining the punitive damages claim against the School while dismissing the punitive damages claim as against the Diocese. While, to reiterate, I do not dispute that plaintiff has alleged the minimum necessary to state negligence claims against both defendants, her allegations against the School no more evoke "conscious disregard for the rights of others" (Chauca, 30 NY3d at 329 [internal quotation marks omitted]) than do her allegations against the Diocese.
For the reasons explained above, I would modify the order appealed from to dismiss the request for punitive damages against both defendants, and otherwise affirm.
To the extent the majority does otherwise, I respectfully dissent.
Order Supreme Court, New York County (Sabrina B. Kraus, J.), entered October 24, 2023, modified, on the law, to grant defendant Episcopal Diocese of New York's motion to the extent of dismissing the request for punitive damages against it, and otherwise affirmed, without costs.
Opinion by Kapnick J. All concur expect Friedman and O'Neill Levy JJ. who dissent in part in an Opinion by Friedman J.
Kern, J.P., Friedman, Kapnick, Rodriguez, O'Neill Levy, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 25, 2025

Footnotes

Footnote 1: Plaintiff asserts only two causes of action in her complaint: one for general negligence against the School, and another for general negligence against the Episcopal Diocese.

Footnote 2: The Episcopal Diocese's motion for summary judgment followed its answer denying the substantive allegations of plaintiff's complaint.

Footnote 3: The Diocese only withdrew its request to dismiss the School's cross-claims.

Footnote 4: The Safe Schools Against Violence in Education Act (Project SAVE) was enacted July 20, 2000, and, among other things, added article 23-B to the Education Law which required all certified or licensed school personnel to immediately report allegations of child abuse committed in an educational setting by school employees or volunteers to school authorities, who then must notify parents and law enforcement agencies. Educational setting includes "the building and grounds of a school. . . and any other location where direct contact between an employee or volunteer and a child has allegedly occurred" (Education Law, article 23-b, § 1125 [5]).

Footnote 5: The affidavit in relevant part states "Cathedral School of Saint John the Divine is an independent private institution"; "Bravo has never been employed by the Diocese, and the Diocese has no hiring, firing, or retention power over employees of Cathedral School of Saint John the Divine"; and "the Diocese did not own, manage, operate, or supervise the day-to-day operations at Cathedral School of Saint John the Divine, which included the activities and supervision of teachers."

Footnote 6:1 While the majority asserts that "the complaint does not allege any particular response, or lack thereof, by plaintiff's parents," the inescapable inference from paragraph 26 of the complaint — which the majority itself quotes — is that plaintiff's parents, although made aware of what plaintiff had told her friends about the abuse, did nothing about it.

Footnote 7:2 In so holding, the Court of Appeals disagreed with both the majority in this Court and the trial court, which had sustained the punitive damages claim (see Ross v Louise Wise Servs., 4 Misc 3d 279, 285-286 [Sup Ct, NY County 2004], affd 28 AD3d 272 [1st Dept 2006], mod 8 NY3d 478 [2007]).

Footnote 8: While the majority tries to distinguish Ross, it cannot get around the fact that the plaintiffs in that case were held to have a viable claim against the defendant adoption agency for fraud — an intentional tort — while in this case not even plaintiff claims that the School intentionally allowed the abuse to continue.